FILED

2005 Jun-13  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CIVIL ACTION NO. 04-VEH-2901-NE |
| | ] | |
| CURTIS BALDWIN, et al., | ] | |
| | ] | |
| Defendants. | ] | |

### Memorandum of Opinion

## I.   INTRODUCTION

Presently before the Court is the Motion for Summary Judgment of the Defendant (doc. 15).  For the reasons stated herein, and in the Memorandum Opinion previously filed in this matter, the Defendant's Motion for Summary Judgment will be **GRANTED**.

## II.   FACTS[1]

The Court incorporates by reference the facts as stated in its previous Memorandum opinion filed this day.  In addition, the Court notes the following undisputed facts:

Nanny's Lemonade was a sole proprietorship, primarily owned by Curtis

---

[1]The facts herein are recounted and considered, as the Court must, in the light most favorable to the non-movant.  To the extent necessary, the Court will note where the parties disagree on the facts.

Baldwin.  The business consisted of selling freshly squeezed lemonade at lemonade stands at various festivals, concerts, and cultural events.

Both Mr. Cannon and Mrs. Cannon were stand vendors; Mr. Cannon had been working with Nanny's Lemonade at lemonade stands at various festivals or shows at least since 2002.

Generally, the stand vendors were paid ten percent (10%) commission on their individual sales of lemonade based on the number of cups sold.  None were paid salary and none were paid hourly.  Each stand vendor is in competition with the other stand vendors for sales.

Nanny's Lemonade did not withhold taxes, social security, or insurance, from the stand vendors' earnings.  Mr. Cannon and Christina kept track of their earnings from the lemonade business and claimed it, along with Mr. Cannon's income from his decking business, on their 2002 joint tax return on Schedule C, under "Profit and Loss from Business".

The stand vendors sold lemonade at mobile lemonade stands (also called "push carts"), which were three feet by five feet and could be pushed around the concession venue on foot.  One person worked each stand; often concession events called for multiple stands.  Working the stand involved going to a concession event such as a festival, concert, or show and selling lemonade.  When asked about the specific job

2

functions of all involved, Mr. Baldwin testified as follows:

Q.    What do your job duties entail?

A.    At the show or  –

Q.    Before you go to a show.

A.    Well, I load the trailers, get all of the product ready, just to make sure we've got everything we need; the truck, the trailers.  And then when I get to the show, I get up there, and then when I get there, I set all of the stands up where they go.  And then our help shows up and starts setting their stands up and go to work as far as selling lemonade.

* * *

Q.    How many people man a booth?

A.    One.

Q.    And what does he or she do during –

A.    Like I say, I get the product ready so all they have to do is set their stand up as far as getting it arranged, the lemons like they like them or whatever.  Stand there and when somebody orders a lemonade, squeeze the syrup, put the syrup in it, shake it up, and collect their three dollars.

* * *

Q.    Mr. Baldwin, is it my understanding that the people that work for you, their job is what you call an independent is to sell lemonade?

A.    Yeah, that's what they get paid on.

Q.    So the person that is selling the lemonade, that is the only duty or function that they have?

A.      Yes, sir.

Q.      That's how they get paid is by selling the lemonade and getting
        a commission from that?

A.      Yes. sir.

Mr. Baldwin never asked Mr. Cannon to hook up the yellow extension cord to

the receptacle attached to the business truck.  Instead, their last conversation centered

on the family meal, with Mr. Cannon mentioning he looked forward to eating steak

and shrimp, his favorite meal.

The Baldwins' home was located five houses down from the Cannons' home.

As Mr. Baldwin and Mr. Cannon walked outside to get into the truck to pick up Mrs.

Cannon at her home down the street, Mr. Baldwin suddenly realized he had forgotten

to plug the business truck up to the electrical source.

There is no evidence that Mr. Baldwin ordered or instructed Mr. Cannon to

assist him in connecting the truck to a power source.

## III.   STANDARD OF REVIEW

In conducting [a summary judgment analysis], [the Court must]
view all evidence and factual inferences in the light most favorable to
the nonmoving party. *Id.* Summary judgment is proper where "there is
no genuine issue as to any material fact" and "the moving party is
entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However,
"the mere existence of *some* alleged factual dispute between the parties
will not defeat an otherwise properly supported motion for summary
judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106
S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are

material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

## IV.   ANALYSIS

The Employer's Liability Exclusion excludes coverage for bodily injury to an employee arising out of and in the course of his employment by Nanny's, or performing duties related to the conduct of the insured business.  The Plaintiff seeks a declaratory judgment on the theory that, at the time of the injury, Mr. Cannon was an employee acting within the line and scope of his employment.  Defendants argue that they are entitled to Summary Judgment because, as a matter of law, this exclusion does not apply.  The Court agrees.

Assuming, arguendo that Mr. Cannon was an employee at the time of the injury, no reasonable jury could find that he was acting within the scope of his employment at the time of the incident.  His job was to sell lemonade.  He was paid for selling lemonade, nothing more.  That was his only job.  Connecting the truck to outside power was not his responsibility.  He was not asked by Mr. Baldwin to do so.  Accordingly, he acted outside the scope of his employment when he did so.

## V.   CONCLUSION

The Employer's Liability Exclusion does not apply in this case.  Accordingly,

the Motion for Summary Judgment will be **GRANTED**.

**DONE** and **ORDERED**, this 13th day of June, 2005.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge